Good morning, counsel. Good morning. May it please the Court. Counsel. My name is Matthew Calmonson. I'm representing the plaintiff, Cecil Smith. Mr. Smith stepped in a pothole in what we call a slab yard on a port terminal owned by the Port of Portland. And so the question that's presented to this Court is whether a plaintiff's claim against ITC, that's the I-T-C-S-I, accrued at the moment of his injury, or whether a plaintiff was entitled to some opportunity to investigate and discover ITC's actual role in causing the harm. And so before going into the facts, I'd like to talk about Oregon law and how it works, because I think there's a dispute between the parties about that key fact. And I'd like to start with one thing that really wasn't perhaps elaborated as much as it should have been in the briefs, which is the statute of limitations is an affirmative defense. And what that means is it is the defendant's burden to come forth with evidence to prove that the statute of limitations applied as a matter of law. And so you might see in the briefs some statements about some confusion about people's  when we're talking about an affirmative defense like the statute of limitations, it's defendant's burden to come forth with that evidence. And if that evidence doesn't exist, then the case has to be reversed. Now, getting into how accrual works under Oregon law, and to paraphrase the test, on which I think there is no dispute, a claim accrues when the plaintiff knows or should know of a, quote, substantial possibility of the existence of all elements of the claim. So we have three parties here in play, I guess. Well, anyway, start with the Port of Portland. For some reason, they were not sued, and they own the whole place, right? Correct. I don't know why they were not sued also, but be that as it may, I'm just curious about that. But we know that Evers was leasing the place where the accident happened, I guess, right? The slab? We know that they have some relationship. And you knew that ICTSI leased the facilities, the entire facilities, right? And Evers was leasing the place where the slab happened, or sub-leasing, or working in that area, right? Well, all that was factually known. Can I, can I, forgive me for interrupting, but I don't, I, that's not my understanding. My understanding is that we know there was permission and we don't know about the lease. Is that fair? That is fair. Or sub-lease, certainly. Yes. Okay. Right. And so what the facts show, Your Honor, is, and this is based on what my client, my client's understanding of the facts were, because we still don't know what the facts really are. My client's understanding, my client is a Marine clerk working on this busy port terminal, hundreds of acres, is that the Port of Portland owns the port terminal, Terminal No. 6. That is factually known. That is what he knows. They own Terminal 6. Right. He believes that a company called ITSE, Defendant, leases Terminal 6 from the port. That's his belief. I thought he understood that. That's clearly established, that they do lease it from the port. Well, we have since, we do have that lease. But at the moment of its injury, and that's the factual, that's the moment in which we look at the facts, because they stated that at that moment in time, he had all the facts that he needed to know for the claim to accrue immediately. So we look at not what we've discovered, because the attorneys got the lease. That's what he knew at that time is what I'm concerned about. Yes. He knew that, how do you pronounce it, Eastsea? ITSE. He knew that they leased the place from the port. He believed that ITSE leased from the port. And what did he believe at that time about Everest? That Everest subleased the slab yard from ITSE. So he knew that there was the lease and the sublease at the time of the accident. I guess I'm quibbling with the word knew, that he believed. He believed that to be the case. Right. But he didn't sue all those people at that time. He knew that he was, and he was working for a company called Jones-Steva-Doering, not to add another entity into the mix. But, again, we have to sort of look at this in the context of Oregon law. So if he believed that that was the case, why didn't he just simply add them all to the lawsuit, even though he had to find out later on, specifically, possibly, who was liable under all sorts of principles of law? But if he believed that they were involved, lessee, subleasee, why didn't he just simply name them all in the lawsuit? The reason is because he did not have sufficient information to know that ITSE, that he had a claim against ITSE. And I can explain why, Your Honor. Under Oregon law, a landlord, and that's what ITSE is in this context, they subleased to Everest, generally is not liable. They generally are not liable unless they exercise sufficient control over the premises. And there is no evidence in this record that ITSE exercised any control over this area. What the record shows is that plaintiff had observed the port filling potholes. So I think there's an argument that could be made that they know that the port exercised some control. He believed that there was a sublease between ITSE and Everest. But there's — but that's it. That's all he knew. So at that point — He knew that a tort was committed. He knew about the tortious conduct. He knew he was injured at that particular location. He knew that those three entities were involved in the totality of the control of that facility. And I guess if he sued them, he would have been able to find out in discovery exactly which theory to pursue and who may have been responsible, who may have been jointly responsible. That's the stuff that evolves from litigation. But the question is, I guess I'm thinking about the Turner case and Cole and Gerke, it's a bit of a conundrum here, because it seems to me that if you know that there's a tort committed and you have knowledge of the players who could be liable, then maybe you have an obligation to bring the litigation against all of them. But that's not what — You don't think that's — The case I'm relying on is TR v. Boy Scouts, an Oregon Supreme Court case. And that talks about when you do not know the identity of the tort feature, there's a specific test that applies. And the specific test is, is there enough of a chance to know that the defendant had a role in causing the injury to require further investigation? That's the first thing. And if so, when would the investigation have revealed the role? So that incorporates your hypothetical, which is if you know there's a chance, that means you know that they're generally involved. That gives rise to a duty to investigate. That's Oregon law. And that's a little bit different than how it works under Federal law. They have a very broad view of accrual. There is a duty to investigate. And there's no other way to interpret the Turner case, which is really a similar fact pattern, which — You have to reconcile it with Gerkey, and your time is running out, and you know that that's your problem. So can you speak to that, please? I'm sorry. Could you — I missed — You've got to reconcile it with Gerkey. That's your problem. That's your problem case, and it's still on the books. So what's your answer to that? My answer is that I think Gerkey is being too broadly applied here. Gerkey is what we call a misnomer case. There was only one possible defendant, and they just got it wrong. And that's it. And so the Court said you knew at the time, as a matter of law, who did it. But what it has in common with your case is the mechanism of injury was obvious immediately. Step in pothole, fell in the store, right? And the entity, the description of the entity, the defendant was going to be the entity that owned the store, and as you said, misnomer, got the wrong — named the wrong defendant. In this case, the entity that was going to be responsible was the entity responsible for maintaining the surface area, right, of the slab yard. Right. And I think that's my problem with applying Gerkey, because it's essentially circular. You could apply that in every case. You could say it's the entity that caused the harm. You know it has to be that entity. Now we just have litigation to figure out who it is. The Oregon Supreme Court has said repeatedly that is not how it works. If there is a chance that they are liable, you have an obligation to investigate. It does not accrue into the investigation, quote, would have revealed their role. So if you have three — Statute of limitations start running in this case. The statute of limitations started running in this case at the earliest when they received the lease that showed that ITSE had control over this area. That's when the claim accrued. That's when it showed their role. So — Go ahead, please. So it's your position that if the lease had never been turned over, the statute of limitations would never have begun to run, even if the plaintiff subjectively knew who leased — who was the lessee? I don't think a claim against ITSE would have run because they were the landlord. They were not the lessee. They subleased to Everaz. Even — okay. Even if he knew that it was the landlord. I would say that no claim accrues until they have all the information you need to state a claim under Oregon law. And they don't have that. I can — Knew or should have known. Right. Knew or should have known. That's correct. So at some point the court would say you took too long. This was discoverable. At some point the court would say that. Right. It's a jury question as to how long the investigation should have lasted. Not necessarily. If he subjectively knew that — who the landlord was, why is that a jury question then? Because landlords generally under Oregon law are not liable for post-lease conditions. So how can we say that he knew as a matter of law that there was — that they had this claim against them when they're generally not liable? So you think a layperson would know that landlords are not generally liable? We impute to the plaintiff the law. The question is what facts do you need to know and do those collection of facts state a claim? Generally we say that the legal issues are not relevant when we're determining what the plaintiff knew or should have known. It's the factual — That's correct. — matters that the plaintiff is charged with knowing or having reason to know. So the law is irrelevant. The law — I 100 percent agree. My point is that you have to know what facts do you need to know to hypothetically state a claim. And there's these cases that say you don't have to go to a lawyer, right? A lawyer doesn't have to tell you that you have a claim as long as you have the collection of facts that are necessary. The fact that they were missing in this case, the specific fact was did Itsy have control over this area? And he had — and there are no facts as to that other than their status as a landlord, and that is not enough. So can I get — your time is just about up, but — Yes, I'm sorry. It's over. — with Judge Ellenson's — with Judge Ellenson's permission. So what is your best response to his — you know what he's going to say, that under Oregon law there's an inevitable discovery principle and that when the mechanism of the injury is immediately apparent that the identity of the tortfeasor in this case was discoverable such that in — as it was in Gerke, the statute was started — it was imputed sort of retrospectively, and they started on the day that she fell. What's your best answer? My response to that is that is an overly broad interpretation of Gerke. That is not what Gerke holds, and that's looking at Gerke in isolation and not in light of all the Oregon Supreme Court cases that came afterwards. Okay. So tell me — now that I told Judge Wallenson I was only going to ask one question,  Tell me what is your read of the holding of Gerke, please? That the plaintiff knew that the store was the possessor and just got it — just made a mistake as to the legal identity. And that's the language that they use. And then you make a mistake as to who the legal — they use that word, identity. Right. But here's the problem. It takes some time. If I fall down in the supermarket, I know it's the supermarket, right? But it takes — you don't go and sue the supermarket. You have to figure out exactly what the corporate entity is, right? And that takes some time in every case to figure out exactly the name of the tortfeasor if it's a corporate entity. And yet in Gerke, they didn't give her any time. Well, it's unclear to me — They started the clock the day she fell, right? That's not clear to me. What's not clear to me about Gerke is whether they gave them — in Gerke, the lawyer did some work to figure out who it was. And then it turned out it was the wrong person. And then there was a deposition later. So you think that's an unanswered question whether they started it right away? Yes.  I think that is an unanswered question. I appreciate that answer.  Thank you. May it please the Court, Todd Zilbert on behalf of ICTSI, Oregon Inc. You don't say ITC. I don't. You say ITCSA. Okay, got it. And I think you already know everything I have to say. I would begin — I think it comes down to Gerke versus Turner. Do you want to speak to that? That's my problem. It's really hard to reconcile those cases with Cole. Cole says, we've got the discovery rule in Oregon. And it sounds very vanilla. Right? Yes. And so how do you reconcile? Gerke does — is it an outlier? I don't think so. The quickest way to this analysis is to ask, what could plaintiff have stated against the court, ICTSI, or Evraz on the day of his injury? The same — Knowing that if he gets it wrong, he's got a Rule 11 problem. He's got a Twombly problem. He can't just — there are plenty of cases where we say those allegations are too broad or unfounded. We're not saying, does he win? We're saying, does he have substantial possibility of a claim? Well, he's got to survive a 12B6. Can he survive a motion to dismiss? Right. Sure. So look at the complaint. Is there anything on the day of the accident that he doesn't know that he alleges in the complaint? The answer is yes. He alleges, paragraph 3 of the complaint, that he doesn't know who has the responsibility for maintaining the asphalt at Terminal 6. And, in fact, it might not just be one entity, right? Pursuant to the lease, it may not be just one entity. It's kind of complicated in that commercial space. Absolutely. Right. Strike the allegation from the complaint. He still is stating a claim that survives a motion to dismiss. He knows, and this is Excerpt of Record 48. He says in his declaration, I was aware. I was aware. All right. And counsel's response to this, to what you're going to read, because we've read this over and over. Okay. His response is he thought he knew. He believed, as a layperson, that he knew. That's where we're at. So what do we do with that, sir? That's enough. He was aware that there's a substantial possibility that ICTSI was the lesser of the property. He's charged with knowledge that he has a claim against the lesser of the property. And Plaintiff's counsel's argument that if there's a lease, the landlord may have turned over responsibility for the premises. We're talking about a substantial possibility. And the Belica v. Green case says you don't have to allege that to survive a motion to dismiss. You have in common with Gerke this immediately apparent mechanism of the injury, and it's pretty clear that the category, right, of the defendant, if not necessarily the identity of the defendant, that's going to be responsible. You have that in common with Gerke, and it's striking. I think our case is better than Gerke. But what about Turner? What about Turner? In Turner, okay, there's two issues in Turner. So in Turner, just for everybody's recollection, we've got a driver on Highway 101. A car enters the highway from a county road and hits the driver. So the easy facts, as you say, although Plaintiff knew the instrumentality of the injury at the time, the Plaintiff in Turner didn't know that the line of sight was obstructed from the county road before that driver turned on the highway. So in fairness, the Plaintiff gets some time to investigate and find out, oh, in fact, that driver couldn't see. But the other thing is, is it the state? Is it the county? Is it the city? Who's responsible? Who is the owner of that road? And the owner of that road has the responsibility and nobody else. But under Oregon law, and Balica v. Green will tell you this, the Port, ICTSI, Evraz, each one has an interest in that property. Each one, there's a substantial possibility of a claim against each one at the moment that he's interested. Let me interrupt and ask you this question. In Turner, the Court said, I believe, that there was insufficient knowledge of tortious conduct because, quote, the dangerousness of the road condition was not obvious as a matter of law. And then they further held, quote, nor was it apparent which entity was responsible for those conditions. It seems to me that here we have an obviously dangerous condition that was not involved in Turner, but not an obviously responsible party. What result follows? There's a substantial possibility that the owner, the lessor, and the lessee of the property have responsibility to third parties to ensure that the premises do not pose an unreasonable risk. That's sufficient because one of those three people have to be responsible, is your position. And we're not going to know that until the end of the case. And you don't need to know that from the get-go. As long as they're all in the soup, somehow potentially responsible, that's sufficient to satisfy the statutory provision. Correct. We're just asking, does the statute of limitations start to run? Counsel, it was my understanding that the plaintiff was aware that Everest leased from ICTSI, leased the premises from them. Is that correct? Is that factual, factually correct? He knew that the port owned the property. Right. He knew that ICTSI leased the property. Right. And he knew that Everest. Forgive me, but right there, I don't mean to interrupt, but that's the part I think you just clarified. He believed. He thought he knew. He believed. He thought he knew. Well, counsel, it's different. And so we went through this in some detail with opposing counsel, and so it's important in response to Judge Rollinson's question. He's a layperson who says, I knew, I thought. That's what he thought, right? He didn't have the lease in hand. He can't dispute the agreed facts. Well, that's what I thought. I thought it was undisputed that he was aware that. He said the same thing as to the sublease. And, in fact, we don't know to this day if there's a sublease. That's my point. And I'm just trying to make sure we're not splitting hairs, but it does make a difference. This is ER 85, agreed fact 6. Plaintiff has known that ICTSI operates Terminal 6 since 2012 at the latest. Right. We understand that. But I'm asking about when you said believed. I'm trying to make sure that you're really consistent about this, because I think you've been a little bit inconsistent when we come to the sublease. He said the same thing in his initial declaration. He said, right, I knew. But he didn't know, because today we don't know about the sublease, right? No, no, no. The agreed facts, though, the agreed facts say that plaintiff has known that ICTSI operates Terminal 6 since 2012. The agreed facts is a different document. Joint statement. We're saying the same thing at this point. I'm happy. But you appreciate the difference. You have said this inconsistently. Well, I think what's important to say is he knew that there was a lease. He didn't know what the lease said. He didn't know that the lease, whether the lease divided up the responsibility for maintaining the asphalt in various ways. And I'm saying we still don't know that. I mean. Now you're talking about the lease with ITCSI and not the sublease. The lease, well, it's really, from my client's perspective, it's ICTSI. The question is that lease with ICTSI in the port. But there's a sublease to EVRAS. EVRAS is storing. We don't know if there's a sublease to EVRAS. That's my point. And for your purposes, it doesn't matter a whole lot. It doesn't matter. But you are stating it inconsistently. Correct. Go ahead. Thank you very much. All right, counsel. We'll give you one minute for rebuttal. I think you exceeded your time, but we'll give you a minute. Thank you very much. If I could just clear up some of the fact, factual confusion. The agreed statement of facts that is in the record does say that we knew there was a lease between what I've been calling ITCSI. Right. We understand. And then the declaration says, I believe. ITCSI. We got that. The court says it doesn't matter as it relates to ITCSI. It does matter. And this is why. And this goes back to what Judge Rawson and I were speaking about before, which is to know whether there's a substantial possibility of whether a claim is, that's defined by the legal environment. The legal environment is Oregon premises liability law. Oregon premises liability law states that landlords are not liable, that they're not liable unless there's certain, they have certain retained control. Where are those facts? That's sorted out during the course of litigation. That is not how Oregon law works. I just fundamentally disagree that that's. Talking about a general premise, which I think we understand because you said this, I think very clearly, and the point is, all of that can change pursuant to the contracts between the parties, right? And I think your position is he didn't, we still don't know about a sublease. That's what doesn't matter as to ICTSI. But there's a stipulation as to the, what I'll call the main lease, ICTSI's lease, right? Right. There's a stipulation as to that, and we have, and we looked at that lease. But what we don't know is, did ITCSI have control over this area? That is the key fact. And if you look at TR versus the Boy Scouts of America, it says if there is a chance, if there is a chance, then you have a duty to investigate. There is a chance in this case, and all we're asking for is the opportunity to investigate. Do you mean that you don't know whether it had exclusive control? Or what do you mean when you say we know there's a lease, it's stipulated we've been over this? Because there's a sublease. Because there's a sublease, so they are now acting like a landlord. And so when you're acting like a landlord, you are not liable unless you retain control over the possession of the premises. And there's no evidence to that. None. Because there may be a sublease. He believes there's a sublease. That's the facts that he knows at the time. So that's why it's, does he have all the information he needs? But why don't you just sue everyone and sort it out later? He, maybe he could, maybe he couldn't. It's not required under Oregon law. If you have reason, if you know or have reason to know of prospective liability, I think the case law does say that you're required to name it. The case law says if there's a chance that someone is liable, it gives rise to a duty to investigate. That has to incorporate when you know that there's various people who might be liable. But there are also cases that say if you know or have reason to know of potential liability, the cause of action accrues. There's one case that I know of that says this is a matter of law, and that's Gerkey. That's it. It is an outlier case. It is cited all the time. I'd like to see another case in Oregon where it's applied. And we're ignoring the Oregon Supreme Court cases afterwards that talk about the duty to investigate. Gerkey doesn't talk about that. And, in fact, there's a later court of appeals case that says that, that says, look, Gerkey didn't even discuss the duty to investigate. All those cases happen later. And in diversity cases, you have to apply the Oregon Supreme Court. Kagan. Which later court of appeals case are you referring to now? The Bodidov case. Sorry. You stepped away from the microphone. I have it written down right here. I want to make sure we have it. It's Bodidov v. Kutsev, 164, P3D-1212. And you'll see they distinguish Gerkey and say they didn't even talk about the duty to investigate that case. And then there's various cases. Sotomayor. So in Cole, you have the security contractor, and nobody had a clue that there was any security issue with that case at all. So it seems to me that there's no knowledge at all in Cole that the security contractor could be in play in that litigation. But it seems to me that here, you know that one of these three people are going to be liable. But you don't know at the beginning of the litigation which one of those three. So I guess the focus question is that if you know all of the three potential defendants, does that trigger the running of the statute of limitations, even though you don't know which of those three defendants will ultimately be held liable? I guess that's the conundrum we have. That is the question. And I think Turner answers that question. Well, why is that the question, counsel? How is it – how is it – why is it possible that we – you nodded your head yes in response to Judge Block's question where you said you know it was one of those three. Just like in Cole, it could be a fourth. We don't know. Right. I mean, it could be any number of questions. I think any number of entities. But if it's going to be ICTSI, there has to be a fact that we don't know. And if we – if there are facts that are necessary, then it does not accrue at that time. Ms. Block was asking a different question. Oh, I'm sorry. Why didn't you just name one of those three if the universe was just three, and my – and you nodded your head, which caused me to wonder, because I don't know that you know the universe is three. No, no. I was nodding to what I thought was sort of his specific issue spot, which is it comes down to when you know there's three possibilities, does it accrue immediately against all of them at that time? I think the answer is no. I think Turner says the answer is no. Seriously, that's the focus question. I'm not so sure that Turner answers that question, because I think the focus of Turner is that you know that you're injured. You know there's a tort that's committed. It's not like you are dealing with Turner where there's a security contractor who you have no knowledge at all that that person could possibly be at all liable. You find that out later. I get that. But here you know one of those three people are going to get hit. Look, I guess in retrospect you would have sued them all, but that's a separate question, right? The Turner case – and opposing counsel is right. The difference that you've got – there's a little bit of Gherke and a little bit of Turner here. But the problem – your problem with Turner is that you have a very clear mechanism of injury here that he knew right away, undisputably. He stepped in the pothole and got hurt right away. And there was an evolution of facts of discovery in Turner where it was not immediately apparent, right, that the mechanism of injury was as he described with the highway accident. That's correct. We didn't know what specific thing about the intersection was wrong, but the court gave two reasons. It didn't just say one. It said one, you didn't know, and the second is you didn't even know who was responsible for mitigating safety hazards at all. And that leads us to our case. Are you involved with the filing issue here also? If you lose on the statute of limitations, are you involved with whether you filed on time the last day of the running of the statute? That is part of the ITSE appeal, yes. I'm curious about that because you have this curious procedural issue here that if we don't agree with you and you say that the statute did commence and you had the two years, you filed on the last day, am I correct? Correct. And we have this kind of curiosity where you got a receipt for the filing, but you have no proof that the complaint was actually accepted through the electronic system, so to speak? That's correct. We have a declaration from the paralegal, from a former lawyer, saying I followed all the steps and I got a receipt and then I received a phone call six days later. You think you timely filed in any event because of that? Yes. Or there's an issue of fact. I'm not an electronic whiz. I'm sort of generation gap because of that. But we have electronic filing now which tells you exactly whether the complaint was filed or not. Here you don't have any proof that the complaint was filed. What do we do with that? Our position is that there's an issue of fact on that based on the testimony of the paralegal who said I followed all the steps, I did what I was supposed to do, and so then it comes down to you. That issue wasn't technically raised in this case. The brief didn't really address that in this case. Isn't that in the next case that you really briefed at? No. It's in the ICT side case, not the Everest case. Oh, it's not the Everest case. Okay. And so that's where the issue of fact is. We have testimony from the person who did it. They said I followed all the steps, I did it. And the question really is there's no case law in the Ninth Circuit. There's some in the Seventh Circuit on this. You know, was it delivered? Whose fault was it? And we think there's a question there. It's a little bit more than that, isn't it? My understanding of the record, my recollection, correct me if I'm wrong, he got a docket number. He got a docket number and a receipt that showed the filing fee was paid. He got a case number. Right. So it's not just that you have a declaration saying that I submitted it. Right. Paralegally. He also got something back. He got something back. A docket number specific for the case, right? True. Didn't he say he could see it on the docket, a docket entry? That I don't recall. Then the clerk six days later said we don't have the complaint for some reason. The clerk called and said we don't have a copy of the complaint. They refiled. And that takes us to where we are today. So it's a six-day period we're talking about. It's a problem. I don't like it, but it's a problem. All right. Good. All right. Thank you, counsel. Thank you. You've exceeded your time. All right. The case just argued is submitted for decision by the court.
judges: Rawlinson, Christen, Block